**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| REBECCA CROWSON, individually and as parent and next friend of B.C., a minor, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>WESTERN HEIGHTS INDEPENDENT )<br>SCHOOL DISTRICT NO. 1-041, a/k/a )<br>WESTERN HEIGHTS HIGH SCHOOL; )<br>MARCUS KNIGHT, an individual; and )<br>KENNETH ROBERT HARTFIELD JR., )<br>an individual )<br>)<br>Defendants. ) | Case No. CIV-12-053-D<br><br>(District Court of Oklahoma County, Oklahoma, Case No. CJ-2011-9762) |

**O R D E R**

Before the Court is Defendant Western Heights Independent School District No. 41's ("Western Heights") Motion for Summary Judgment [Dkt. # 38], filed pursuant to Fed. R. Civ. P. 56. The Motion is fully briefed and at issue. For the reasons below, the Court grants summary judgment to Western Heights on all Plaintiff's § 1983 claims and declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which will be remanded to Oklahoma County district court.

**I. Introduction**

This action involves allegations of harassment and bullying at Western Heights High School in Oklahoma County, Oklahoma. Plaintiff Rebecca Crowson, individually and on behalf of her minor child, B.C., alleges that B.C. was attacked by a fellow student, Defendant

Kenneth Robert Hartfield, Jr. ("Hartfield"), during wrestling practice at Western Heights High School. Pet. ¶¶ 6-9. Plaintiff alleges that B.C.'s wrestling coach, Defendant Marcus Knight ("Knight"), failed to stop the altercation and, in fact, encouraged it. *Id.* ¶ 7. Additionally, Plaintiff alleges that the school district, Western Heights, through both negligence and intentional actions taken prior to and after the alleged incident, violated B.C.'s right to an "education free from bullying" and failed to protect B.C.'s right to complain about said bullying. *Id.* ¶¶ 29-30.

### A. Factual Background

The following facts are uncontested, except where noted.

#### 1. The Day of the Alleged Incident

B.C. was a student and a member of the wrestling team at Western Heights High School. On February 28, 2011, B.C. had decided not to "dress out" for wrestling class because he believed the "season was practically over" for him. *See* Dep. Tr. of B.C. ("B.C. Tr.") at 13:2-8. Despite this, B.C. engaged in a "fair match" with another student, J.W., during wrestling practice. *See id.* at 38:19-25. What exactly happened next, however, is highly disputed. Plaintiff alleges that during the match with J.W. other students, including Defendant Hartfield, came onto the mat and "started kicking and hitting" B.C. *Id.* at 56:2-13. Plaintiff further alleges that the attack was precipitated by comments made by the assistant wrestling coach, Defendant Knight, in which he allegedly told the other wrestlers that B.C. called "all of the black people niggers" and "all of the white people Jews." *Id.* Defendant Knight maintains that he made no such comments about B.C. to the other wrestlers and that

he did not witness the other students attack B.C. *See* Dep. Tr. of Marcus Knight ("Knight Tr.") at 22:9-23-9. He admits, however, that he did not watch the entire match because he was "helping the girls get ready for state." *Id*. at 23:10-12. Likewise, Defendant Hartfield disputes Plaintiff's allegations, maintaining that the alleged attack never occurred. *See* Dep. Tr. of Kenneth Hartfield Jr. ("Hartfield Tr.") at 16:9-24.

After the alleged incident, B.C. states that he went to the school's front office where he told T.H., an office aide and fellow student, about the altercation. *See* B.C. Tr. at 9:6-10:2. However, B.C. did not inform any school administrators about the alleged incident, *see id.* at 9:16-10:13, and he did not seek any medical attention while at school – or anytime thereafter – for his alleged injuries (*see id.* at 41:10-14), but he did take some Advil. *See id*. at 41:15-22.

### 2. The School's Investigation

The following day B.C.'s parents met with school officials to discuss what had occurred between B.C. and the other wrestlers. *See* Dep. Tr. of Rebecca Crowson ("Crowson Tr.") at 117:22-118:10. Ms. Crowson had not made any prior complaints to a school official about a teacher, coach, administrator, or student at Western Heights. *See id.* In response to her complaint, school officials conducted an investigation into the alleged incident and suspended Defendant Knight and Jeff Little, another wrestling coach, during its pendency. *See* Dep. Tr. of John Erickson ("Erickson Tr.") at 15:20-16-14. School officials took written statements from all of the students present in the wrestling room that day and ultimately determined that B.C.'s account of the incident could not be corroborated. *See id.* at 17:4-

18-4. Nevertheless, school officials determined there may have been a lack of supervision in the wrestling room on the date in question and that the coaches may not have adequately planned for class due to the fact that the boys' wrestling season was almost over. *See* Dep. Tr. of Rita Morgan ("Morgan Tr.") at 39:3-9. To address these concerns, school officials generated a "Plan of Improvement" for the wrestling program and monitored its implementation. *See* Morgan Tt. at 40:17-41:5.

Additionally, B.C. does not believe that any teachers, coaches, or staff at Western Heights retaliated against him because he reported the incident. *See* B.C. Tr. at 47:10-48:4. And he did not have any problems with school administrators subsequent to the alleged incident. *Id*. at 53:22-54:5. Finally, B.C. has not had any problems with Defendant Knight since the incident, and B.C. even approached him on the last day of the school year and was given permission to try-out for the wrestling team the following year. *See id.* at 52:7-22.

**B.  Procedural History**

This action was originally filed in Oklahoma County district court on December 9, 2011. Invoking this Court's subject matter jurisdiction under 28 U.S.C. § 1331, Defendant Western Heights timely removed the case on January 17, 2012 [Dkt. # 1]. Plaintiff's Petition sets forth three causes of action: Count I alleges negligence against Western Heights under Oklahoma's Governmental Tort Claims Act, Okla. Stat. tit. 51 §§ 151-72; Count II alleges a civil rights claim under 42 U.S.C. § 1983 against Western Heights for violations of B.C.'s constitutional rights; and Count III alleges a state law tort claim for assault and battery

against Defendants Knight and Hartfield. Western Heights now moves this Court for summary judgment on Plaintiff's claims in Count I and Count II [Dkt. # 38].[1]

## II. Applicable Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party." *Id.* at 255. Judgment as a matter of law is appropriate, therefore, when "the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When applying this standard, all facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011). If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp.*, 477 U.S. at 322.

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp.*, 477 U.S. at 322-23. If the movant

---

[1] Count III is against only Defendants Knight and Hartfield in their respective individual capacities, and neither defendant has moved for summary judgment.

carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III. Analysis

#### A. Plaintiff's § 1983 Claims

Plaintiff does not allege that Defendant Knight acted under color of law. Instead, she alleges a § 1983 claim based solely upon (1) Western Heights' failure to protect B.C. from the alleged assault by a private actor, thereby depriving B.C. of "his right to a safe school environment and his right to an education free from bullying, harassment and physical harm," and (2) Western Heights' failure "to protect the right to complain about such bullying and harassment," thereby depriving B.C. of his First Amendment right to petition for redress of grievances. *See* Pet. ¶¶ 29-30. However, neither theory supports a finding of liability against the school district absent a basis for municipal liability as set forth in *Monell v. Department*

*of Social Services*, 436 U.S. 658 (1978).[2] Accordingly, Western Heights is entitled to judgment as a matter of law.

Municipalities and political subdivisions, such as a public school district, are considered "persons" within the meaning of § 1983. *Monell*, 436 U.S. at 689. However, "a municipality may not be held liable under § 1983 simply because it employs a tortfeasor." *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997). In light of the statute's imposition of liability on one who "subjects [a person], or causes [that person] to be subjected," to a deprivation of federal rights, the Supreme Court concluded that it "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692.

Instead, "it is when execution of a government's policy or custom . . . inflicts the injury that the government entity is responsible under § 1983." *Id.* at 694. A plaintiff seeking to impose liability on a municipality must identify a municipal "policy statement, ordinance, regulation, or decision officially adopted and promulgated," or a municipal custom or practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law" that caused the plaintiff's injury. *Id.* at 690-91. (internal quotations

---

[2] In order to establish a § 1983 claim against a school district, a plaintiff must both identify a deprivation of federal rights *and* identify a district policy or custom that was the moving force behind the alleged violation. Because the record fails to identify – much less establish – that a policy or custom of the school district was the moving force behind the harm alleged, Western Heights is entitled to judgment as a matter of law, and the Court need not address whether the claimed deprivation was of a federal right. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *see also Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

omitted); *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1249-50 (10th Cir. 1999). Further, to warrant municipal liability, it is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality; "[t]he plaintiff must also demonstrate that, through its *deliberate conduct*, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404; *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999). That is, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404; *see Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010); *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2150 (2011); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002).

    Here, Plaintiff has not identified a policy adopted by Western Heights which resulted in a constitutional violation. *See Brown*, 520 U.S. at 403-04 ("Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."). Nor has Plaintiff identified a custom that "is so widespread as to have the force of law" in connection with her claims. *See id*. at 404; *see also Bryson*, 627 F.3d at 788. And while municipal liability may also be shown by "actions taken by a municipality's final policymakers," *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007), Plaintiff has not alleged that a final policymaker for the school district "specifically directed the action resulting in the deprivation" of B.C.'s constitutional

rights. *Brown*, 520 U.S. at 406. Nor has Plaintiff demonstrated that a final policymaker's decision to hire or failure to adequately train or supervise Defendant Knight "reflect[ed] deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow the decision." *Id.*; *see also Canton v. Harris*, 489 U.S. 378, 387 (1989) (recognizing that an "inadequate training" claim could be the basis for § 1983 liability in limited circumstances). Viewing the undisputed facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has not alleged specific facts showing there is a genuine issue for trial, and that Western Heights is entitled to judgment as a matter of law. Accordingly, Western Heights' Motion for Summary Judgment is granted as to Plaintiff's § 1983 claims.

### B. Plaintiff's Remaining Claims

Having found Western Heights entitled to summary judgment on Plaintiff's § 1983 claims, the Court declines pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over Plaintiff's remaining claims. It is well established that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation omitted). Accordingly, Plaintiff's negligence claim (Count I) against Western Heights and Plaintiff's assault and battery claim (Count III) against Defendants Knight and Hartfield should be remanded to state court.

### IV. Conclusion

For the foregoing reasons, Western Heights' Motion for Summary Judgment [Dkt. # 38] is GRANTED as to Plaintiff's § 1983 claims. Finding no other independent basis for

federal jurisdiction, Plaintiff's negligence claim against Western Heights (Count I) and Plaintiff's assault and battery claim against Defendants Knight and Hartfield (Count III) are remanded to the District Court of Oklahoma County, Oklahoma.

IT IS SO ORDERED this 7th day of February, 2013.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE